UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

|  |  |  |
|---|---|---|
| AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| vs. | ) | 1:06-cv-1044- SEB-JMS |
|  | ) | |
| C.M.A. MORTGAGE, INC., d/b/a/ EMINENT | ) | |
| MORTGAGE COMPANY and JASON | ) | |
| WANEK, | ) | |
| Defendants. | ) | |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This is a declaratory judgment action wherein American Family Insurance

Company ("American Family") seeks a declaration that it owes no defense or indemnity

to C.M.A. Mortgage, Inc. d/b/a Eminent Mortgage Company ("C.M.A.") in connection

with a class action lawsuit filed against C.M.A. by Jason Wanek, which alleges C.M.A.

violated the Fair Credit Reporting Act ("FCRA").  American Family issued to C.M.A. a

Business Owners's policy of insurance ("BOP") and a Commercial Liability Umbrella

policy ("Umbrella policy"), which provided insurance during the relevant time period,

and a Commercial Blanket Excess Liability policy, which provided coverage for a time

period which predated the activity which resulted in Wanek's claim.  The insurer's

complaint asks us to declare that no coverage exists under any of these policies, and as is

typical of this type of "coverage case," the matter is presented to us for determination on

cross motions for summary judgment, with C.M.A. and Wanek opposing American

Family and requesting that we find that coverage exists under the BOP and Umbrella policies.

### *Factual Background*

On August 18, 2005, Jason Wanek, an Illinois resident, filed a lawsuit against C.M.A. in the Northern District of Illinois, in which he alleges that he had received a solicitation from C.M.A. in the mail.  C.M.A. is an Indiana corporation engaged in the mortgage lending business in several states, including Illinois.  The solicitation Wanek received contained the following admonition: "Information contained in your credit report was used in connection with this offer."  Wanek had never given C.M.A. permission to access his credit report.  Thus, he has alleged in his lawsuit that C.M.A. accessed his and others' credit reports as a part of a "prescreening" process which generated the letters of solicitation sent to him and to other consumers who, by virtue of the prescreening, were identified as having certain credit traits (i.e. high credit card debt and a limited number of late payments) following a review of their credit reports.

FCRA was Congress's legislative response to concerns regarding the accuracy and fairness of credit reporting, as well as a consumer's right to privacy.  15 U.S.C. § 1681(a)(4).  Wanek claims that C.M.A. violated FCRA when it accessed his and other consumers' credit reports without their permission and without a permissible purpose, such as to make a "firm offer of credit," as that phrase is defined in the Act.  *See* 15

U.S.C. § 1681a(l).  Firm offers of credit must contain certain disclosures, which Wanek claims were absent from the solicitation he received.  *See* 15 U.S.C. § 1681m(d).  While Wanek does not claim to have suffered any actual damage as a result of this alleged violation, he does seek to recover the statutory penalties provided for by FCRA when a violation is established.  *See* 15 U.S.C. § 1681n.

The case at bar was filed by American Family within a year of Wanek's filing suit against its insured, C.M.A..  American Family claims that its policy provides no coverage to C.M.A. for the type of claim raised in Wanek's lawsuit.  In its summary judgment motion, American Family has examined the various coverages its policies provide and argues that coverage under these circumstances is unavailable as to each.

In their cross motion and response, C.M.A. and Wanek cut to the chase,[1] by admitting that they seek coverage only under the "advertising injury" provisions of both the BOP and the Umbrella policies.  Accordingly, our analysis will be limited to those sections as well.

---

[1]Wanek and C.M.A. have reached a settlement in the class action lawsuit which Wanek filed in the Northern District of Illinois for an amount nearly equal to the amount of insurance coverage provided for in the policies at issue here.  Wanek, on behalf of the class, has agreed that most of that settlement will be executed upon only against C.M.A.'s insurers.  However, the class action settlement has yet to be approved by the district court.  Thus, Wanek filed the cross motion for summary judgment and strenuously opposes American Family's positions  in this litigation, obviously hoping to gain an opportunity for the class to tap into the policy proceeds.  C.M.A. has filed a simple joinder to Wanek's motion.  Given the nature of the underlying lawsuit and settlement, regardless of our decision in this case, there will be additional issues to be decided before American Family is required to pay out any policy proceeds.

*Policy Provisions for Advertising Injury*

Under the BOP, American Family agreed to provide liability coverage for "those sums that the insured becomes legally obligated to pay as damages because of ... 'personal and advertising injury' to which this insurance applies. …  However, we will have no duty to defend the insured against any 'suit' seeking damages for ... 'personal and advertising injury' to which this insurance does not apply."  The BOP defines "personal and advertising injury" as:

> "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:
>
> a.   False arrest, detention or imprisonment;
> b.   Malicious prosecution;
> c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupation of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e.   Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f.   The use of another's advertising idea in your "advertisement"; or
> g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement".

The definition in the Umbrella policy is identical to this BOP provision, with the exception of one word, which difference has no significance here.  The liability coverage provided by both policies applies to  advertising injury caused by an offense arising out of the insured's business, and both  policies define "advertisement" as a notice that is

broadcast or published to the general public or specific market segments about the insured's goods, products or services for the purpose of attracting customers or supporters.

At the heart of the argument advanced by C.M.A. and Wanek in favor of their claimed coverage is that any reasonable insured would understand the insurance policy to provide coverage for damages that C.M.A. becomes liable to pay as a result of sending the solicitation letters at issue here and that any ambiguity in the policy language must be construed against the insurer. In an effort to focus the debate, C.M.A. and Wanek point to the one offense that they claim triggers coverage here under both policies, to wit, C.M.A.'s solicitation letter to Wanek *et al* based on the unauthorized use of his credit report; this mailing constituted a written publication that violated Wanek's right of privacy under FCRA.  American Family disagrees that the solicitation to Wanek triggered coverage; in addition, American Family contends that policy exclusions apply to foreclose coverage.

The American Family policies exclude coverage for advertising injury which was "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict ... advertising injury."  They also exclude advertising injury if it arose "out of a criminal act committed by or at the direction of the

insured."  American Family maintains that the effect of these two exclusions is to defeat coverage here.

*Analysis*

The question of whether standard commercial liability policies, such as those at issue here, provide coverage for claims made against an insured under FCRA, such as those made by Wanek, has been the subject of two recent federal district court decisions, one in Maryland and the other in Illinois.  *Zurich American Ins. Co. v. Fieldstone Mortgage Co.*, 2007 WL 3268460 (D. Md. Oct. 26, 2007)[2]; *Pietras v. Sentry Ins. Co.*, 2007 WL 715759 (N.D. Ill. March 6, 2007).  In each of those decisions, the court ruled in favor of the insured and against the insurer on cross motions for summary judgment. While neither of those decisions has precedential effect here, in the sense that they compel a similar ruling,  they, nevertheless, contain thoughtful discussions which have been helpful to our analysis.  Accordingly, we draw on their holdings below in reaching our own conclusions.

In *Zurich*, the facts are surprisingly similar to those in the case at bar.  One Jeff

---

[2]The *Zurich* decision was brought to our attention by Wanek via a submission of supplemental authority shortly after the Maryland district court handed it down.   American Family moved to strike the submission as untimely (Doc. #100) because the motions before us had already been fully briefed.  The motion to strike is without merit.  The submission of authority in the form of decisions which have been issued by courts subsequent to the completion of briefing on a motion but prior to a ruling in the pending matter is not only routine and common place, it is often regarded as quite helpful  by the court.

Rhodes filed a class action lawsuit against Fieldstone Mortgage alleging that Fieldstone improperly accessed and utilized his and others' credit information, in violation of FCRA's requirement that access to a consumer's credit reports either be consensual or for a permissible purpose.  Rhodes claimed that he had received "prescreened" offers from Fieldstone based on information from a consumer credit report pertaining to him, as had other consumers who received such solicitations.  As with Wanek here, Rhodes sought statutory damages, injunctive relief, costs and fees based on a willful violation of FCRA. *Zurich*, at *1.

Zurich had provided Fieldstone with insurance coverage through commercial liability policies. After agreeing to defend Fieldstone against Rhodes's claim under a complete reservation of rights, including the right to file a declaratory judgment action, Zurich brought a declaratory judgment action in the federal district court in Maryland, seeking a declaration that Zurich was not required to defend Fieldstone under the terms of its liability policy.  The Zurich policies provided that the insurer would pay those sums that Fieldstone became legally obligated to pay as damages because of personal and advertising injury caused by an offense arising out of Fieldstone's business.  Such an offense under the Zurich policies included "oral or written publication, in any manner, of material that violates a person's right to privacy."  *Zurich,* at *1.

In support of its argument that FCRA does not create the sort of right to privacy referenced in its policies, Zurich cited an appellate decision from the Fourth Circuit Court of Appeals which, with regard to the Telephone Consumer Protection Act ("TCPA"), distinguished between the types of privacy interests which that statute was designed to protect. *See Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.,* 407 F.3d 631 (4th Cir. 2005). American Family cites this Fourth Circuit decision, as well as a similar TCPA holding out of the Seventh Circuit. *See American States Ins. Co. v. Capital Associates of Jackson County,* 392 F.3d 939 (7th Cir. 2004). The Fourth Circuit decision held that the TCPA was intended to protect consumers from receiving intrusive junk faxes, not from being exposed to the content of such faxes. *Resource Bankshares,* at 641. However, in *Zurich,* the Maryland federal district court judge distinguished the *Resource Bankshares* decision, ruling that unlike the TCPA case, FCRA and the Rhodes complaint were premised on the content of the solicitation and the manner in which it was discovered, which are both objectionable under federal law. *Zurich*, at *4.

*Zurich* also includes a discussion of certain Maryland state court decisions dealing with the common law tort of invasion of privacy, which the insurer cited as support for its argument that no "publication" occurred as a result Fieldstone's accessing Rhodes's credit information. However, this argument was also rejected on the grounds that Rhodes was suing not simply because his credit information was improperly accessed but also because it was used to "prescreen" him for purposes of soliciting his business through a

-8-

mailing. *Zurich*, at *6.  Ultimately, the District Court in Maryland found that the Zurich policy required it to provide Fieldstone with a defense to the Rhodes claim, because the claim was potentially covered by the policy. *Zurich,* at *3, *7.

In the Illinois case, *Pietras v. Sentry Insurance*, *supra*, Nancy Pietras had filed a FCRA class action against Curfin, which she then settled in part by acquiring Curfin's rights against its insurer, Sentry Insurance Company. *Pietras*, at *1.  Pietras had alleged that Curfin sent a mailing to her and others indicating they were pre-approved for an auto loan.  She claimed Curfin did so based on its review of credit reports without having secured their authorization or doing so for a permissible purpose.  Sentry refused to defend Curfin against the Pietras claim, despite an insurance provision in the policy covering advertising injury, a policy provision which was virtually identical to those at issue in the *Zurich* case and the case at bar.  Sentry argued that Curfin's mailings did not involve Pietras's private information or publication of such private information.[3]  *Pietras*, at *1.

The court in *Pietras* rejected the insurer's reliance on the TCPA opinion in *American States Ins. Co. v. Capital Associates of Jackson County,* 392 F.3d 939 (7th Cir. 2004), in rejecting Sentry's defense that the insurance policy did not provide coverage for the type of privacy violation FCRA addresses.  The *Pietras* court reasoned that,

---

[3]In addition to the fact that the insurance policy provisions were nearly identical to those at issue in this case, the claims raised in the complaint were also nearly identical to Wanek's and, in fact,  the attorneys who represented Pietras also represent Wanek in this action.

subsequent to the decision in *American States,* wherein the Seventh Circuit opined that Illinois courts would likely distinguish between privacy invasion that involves dissemination of information versus a violation of the right to seclusion, the Illinois Supreme Court rejected such a distinction, holding that the standard advertising injury language in liability policies obligated insurers to defend junk-fax lawsuits. *See Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 860 N.E.2d 307 (Ind. 2006). Further, as the Illinois federal district court noted, unlike a junk-fax claim, the FCRA claims made by Pietras include elements of both a violation of the right to seclusion and a violation of the right to have one's private information maintained as private. *Pietras,* at *3.

The insurer in *Pietras* had also argued that policy language requires "publication" before coverage is invoked and no publication had occurred. The insurer argued that publication requires dissemination to the general public and, as in the common law tort of invasion of privacy, more than a communication to a single person or small group is required. The court refused to import common law tort principles into the analysis and noted, in any event, that it was not free to disregard the holding by the Illinois Supreme Court, in *Valley Forge* that advertising injury includes communication to as few as a single person. *Pietras*, at *3 (quoting *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 860 N.E.2d at 317).

In similar fashion to the courts' analyses in *Zurich* and *Pietras*, we apply the principles of insurance policy interpretation as set out by the applicable state law to reach

our determination.  Both sides here agree that Indiana law applies.  However, C.M.A. and

Wanek contend that, in the context of this dispute, Indiana law is identical to Illinois law,

as established by the Seventh Circuit in *I/N Kote v. Hartford Steam Boiler Inspection and

Ins. Co.*, 115 F.3d 1312, 1316 (7th Cir. 1997).  American Family suggests some

differences between the two forums' holdings, based on the manner in which Indiana

common law determines liability for a public disclosure of private facts rather than the

way in which the two states interpret insurance policies.  We share the view explicated by

the court in *Pietras*, however, that the common law principles covering the tort of

invasion of privacy have no relevance to insurance contract interpretations.  The Indiana

Supreme Court joins with virtually all other state courts in holding that, in interpreting

insurance contracts, any ambiguity must be resolved in favor of the insured.  *Auto-

Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1283 (Ind. 2006).  Accordingly, though

Indiana law applies to this case, we find no material difference between its principles of

law with respect to interpreting an insurance policy and those established under Illinois

law.  *I/N Kote v. Hartford Steam Boiler Inspection and Ins. Co.*, 115 F.3d 1312, 1316 (7th

Cir. 1997)

    That said, we find the arguments advanced by  C.M.A. and Wanek to be

compelling.  A reasonable person who reads the advertising injury provisions of these

policies would conclude that coverage exists for a claim arising out of the mailing of a

solicitation letter that was triggered by a violation of the privacy protection rights

-11-

established in FCRA.  The policy provides that it covers liability for "[o]ral or written

publication, in any manner, of material that violates a person's right of privacy."  The

phrase, "in any manner," leaves no room for equivocation.  There is, for example,  no

exception specified for statutory damages, as Defendants contend is provided for in some

policies.  Consequently, if Wanek prevails in his claim for statutory damages, those

damages would be damages payable by C.M.A.  In addition, the solicitation letter at issue

falls squarely within the insurance policy definition of "advertisement," buttressing the

insured's assumption that he is covered under those terms.

American Family's arguments with regard to lack of privacy violation and

publication are the same as those made by the insurers in *Zurich* and *Pietras*.  We reject

those arguments for the same reasons our two sister district courts rejected them, as

explained above.

American Family also contends that exclusions in its policy apply to negate

coverage for damages resulting from actions taken by the insured which it knew would

inflict advertising injury or which arose out of a criminal act.  In *Safeco Ins. Co. of

America v. Burr*, __ U.S. __, 127 S. Ct. 2201 (2007), the Supreme Court explained that

the state of mind necessary for statutory damages liability to attach in a FCRA case can

be as minimal as carelessness and, in any case, much less than that required to establish

criminal intent.  *Id.* at 2215.  Further, the analysis employed by the Seventh Circuit in *Red

Ball Leasing v. Hartford Accident & Indem. Co.,* 915 F.2d 306, 312 (7th Cir. 1990) and

applied by Judge McKinney of our court in *Allstate Ins. Co. v. Norris,* 795 F.Supp. 272, 275 (S.D. Ind. 1992), in deciding whether an action is "volitional" so as to be intentional and not an "accident," have not withstood scrutiny by the Indiana Supreme Court. *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1285-86 (Ind. 2006). American Family's attempt to convince us that its policy exclusion for intentional acts applies here has been specifically rejected by the Indiana Supreme Court for the reason that, if permitted, such an interpretation of "intentional" would likely produce unpredictable judicial applications that would run counter to "our well-established principle that where insurance policies are ambiguous, they are to be 'construed strictly against the insurer' and ... viewed from the insured's standpoint." *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1286 (Ind. 2006). On that basis, we hold that the policy exclusions cited by American Family do not exclude coverage for the FCRA violation alleged in Wanek's complaint.

### *Conclusion*

For the reasons set forth above and consistent with the related holdings in the *Zurich* and *Pietras* cases, we declare that the complaint filed by Wanek against C.M.A. in the Northern District of Illinois states a claim that is potentially covered by American Family's BOP and Umbrella policies and thus triggers the requirement that American Family provide to C.M.A. a defense in that litigation. Accordingly, we GRANT summary judgment in favor of Wanek and C.M.A. (Doc. #63) and DENY the cross

motion for summary judgment motion by American Family (Doc. #49).  American

Family's Motion to Strike Supplemental Authority (Doc. #100) is also DENIED.

**IT IS SO ORDERED**.

Date: ___03/31/2008___

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jill Christine Anderson
FREEBORN & PETERS LLP
janderson@freebornpeters.com

Monica Renee Brownewell Smith
BARNES & THORNBURG LLP
monica.brownewell@btlaw.com

Robert R. Clark
SOMMER BARNARD ATTORNEYS,
PC
rclark@sommerbarnard.com

Joseph L. Fogel
FREEBORN & PETERS LLP
311 S. Wacker Drive, Suite 300
Chicago, IL 60606-6677

Michael Joseph Kelly
FREEBORN & PETERS LLP
mkelly@freebornpeters.com

Robert D. MacGill
BARNES & THORNBURG LLP
rmacgill@btlaw.com

Mark M. Maloney
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309

Paul J. Murphy
KING & SPALDING LLP
pmurphy@kslaw.com

Ranse Murphy Partin
KING & SPALDING LLP
rpartin@kslaw.com