**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **AMERICAN FAMILY MUTUAL** | ) | |
| **INSURANCE COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **1:06-cv-1044-SEB-JMS** |
| | ) | |
| **C.M.A. MORTGAGE, INC. d/b/a** | ) | |
| **EMINENT MORTGAGE COMPANY** | ) | |
| **and JASON WANEK,** | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**ENTRY ON CROSSMOTIONS FOR SUMMARY JUDGMENT**
**ON INDEMNITY AND SETTLEMENT ISSUES**

This case is before the Court on crossmotions for summary judgment, which the

parties have filed in an effort to resolve the remaining issues between them in this

declaratory judgment lawsuit. This is an insurance coverage dispute arising under a

business owners policy and a commercial liability umbrella policy issued by Plaintiff,

American Family Insurance Company ("American Family"). We have previously ruled

that American Family owed Defendant, C.M.A. Mortgage, Inc. d/b/a Eminent Mortgage

Company ("CMA"), a defense to a Fair Credit Reporting Act (FCRA) class action lawsuit

brought by Defendant, Jason Wanek, in the U.S. District Court for the Northern District

of Illinois. In that order, which we issued on March 31, 2008, we examined the coverage

issue, but stopped short of ruling that American Family was obligated to indemnify CMA because, while the parties' crossmotions for summary judgment were under advisement, American Family filed its amended declaratory judgment complaint.  That amended pleading was prompted by Wanek and CMA's voluntary unilateral settlement of the class action lawsuit, which American Family did not consent to and which now, according to American Family, provides and additional basis on which the court should find that American Family is not liable under the insurance policies it issued to CMA.

According to American Family, the class action settlement agreement entered into by CMA with Wanek was unauthorized by it and unreasonable.  In order to settle the class action suit in Illinois and another which had been filed in Wisconsin, CMA agreed to enter into a stipulated judgment in the amount of $2,999,000.00, which judgment was to be satisfied only from the proceeds of the insurance policies issued to CMA  by American Family.  In addition, CMA agreed to assume up to $200,000.00 of the costs of noticing class members and for the administration of claims.  Because the settlement was reached over American Family's objection, the insurer argues that the agreement violated certain contractual provisions and justifies American Family's denial of coverage.

Once again, the parties have filed crossmotions for summary judgment - this time two each - which require us to provide a reprise of the factual and legal disputes underlying this litigation.  Though the emphasis in this ruling is on the facts and circumstances leading up to the settlement of the underlying class action, we shall include

an outline of the relevant facts pertaining to the settlement negotiations.

**<u>Factual Background</u>**

On August 18, 2005, Jason Wanek, an Illinois resident, filed a lawsuit against CMA in the Northern District of Illinois claiming that he had received a solicitation from CMA in the mail which violated the requirements of FCRA.  CMA is an Indiana corporation engaged in the mortgage lending business in several states, including Illinois. The solicitation Wanek received contained the following statement: "Information contained in your credit report was used in connection with this offer."  Wanek claimed that the solicitation constituted a willful violation of FCRA because he had never given CMA permission to access his credit report.  Thus, he alleged, CMA accessed his and others' credit reports as  part of a "prescreening" process which prompted letters of solicitation to him and an entire class of consumers who, by virtue of the prescreening, were identified by CMA as having certain credit traits suggesting they might be more receptive to CMA's sales pitch offering its services to them.

Wanek claimed in his lawsuit that the FCRA violation occurred when CMA accessed his and other consumers' credit reports without permission and without a permissible purpose, that is, to make a "firm offer of credit," as that phrase is defined in the Act.  *See* 15 U.S.C. § 1681a(l).  FCRA requires that firm offers of credit contain certain disclosures, and Wanek claimed such disclosures were omitted from the

solicitation he and others in the class received and that CMA's offer of credit was not a firm offer of credit. *See* 15 U.S.C. § 1681m(d).  While Wanek did not claim specific monetary damages from his receipt of something other than a firm offer of credit,  he sought to recover the statutory penalties available when a violation is established. *See* 15 U.S.C. § 1681n.  At the time Wanek filed his lawsuit, the Seventh Circuit's holding in *Cole v. U.S. Capital,* 389 F.3d 719 (7th Cir. 2004) was the seminal decision explicating the requirements of a valid "firm offer of credit" along with the accompanying disclosures.  The *Cole* decision has been viewed generally as favorable to FCRA plaintiffs, including Wanek, and thus prompted numerous settlements of class actions which had been filed in response to similar credit solicitations.

CMA sought a defense and coverage from American Family, pursuant to its business owners and umbrella policies.  American Family responded by notifying CMA that there were coverage issues which it believed disqualified the claim from coverage, but indicated that it would provide CMA with a defense under a reservation of rights. Several potential bases for denying indemnity were detailed in the reservation of rights letters, including the exclusion for personal and advertising injury resulting from an act the insured knew would inflict the injury.  American Family did agree to reimburse an attorney of CMA's choice for the fees associated with defending the class action during the time American Family would file a declaratory judgment to determine if it owed CMA indemnity and a defense.  The case at bar was filed for that purpose by American

Family on July 7, 2006.

Subsequent to Wanek's filing of his class action lawsuit, the Seventh Circuit handed down a decision in *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006), which held that a defendant bank's credit offer was sufficiently firm to pass muster under the FCRA.  The effect of this ruling was to place some limits on the benefits otherwise extended to FCRA plaintiffs under the *Cole* analysis.  Citing the *Perry* decision as well as a variety of district court decisions which also interpreted the *Cole* decision and FCRA mandates more narrowly, *e.g. Cavin v. Home Loan Center Inc.,* 469 F.Supp.2d 561 (N.D. Ill. 2007), CMA filed a motion for summary judgment in the Illinois class action litigation on February 8, 2007.  CMA contended that it had, in fact, made a "firm offer of credit," as defined and required by FCRA, and therefore had a permissible purpose in obtaining Wanek's credit report.  Wanek filed simultaeously his own Motion for Partial Summary Judgment on the "firm offer" issue, claiming that CMA's solicitation did not satisfy the requirements of "a firm offer of credit."  The district court had previously stayed any ruling on the issue of the willfulness of any alleged FCRA violation in order to allow the Supreme Court decisions in two cases then pending before it involving the issue of willfulness under FCRA to be handed down.

On March 19, 2007, Wanek's counsel proffered a settlement demand to CMA of $4 million to resolve the Illinois class action, which agreement would take the form of a consent judgment and include Plaintiffs' agreement not to execute on anything other than

CMA's insurance proceeds from its policies with American Family.  In the demand letter, counsel for Wanek cited the Indiana Court of Appeals decision, *Cincinnati Ins. Co. v. Young*, 852 N.E. 2d 8 (Ind. App. 2006), which he viewed as binding precedent allowing an insured to settle a case without receiving the consent of its insurer, if the case was being defended under a reservation of rights.  Counsel for American Family was given a copy of Wanek's counsel's demand letter.

Two days later, American Family's in-house counsel wrote to the attorneys representing CMA both in this action and in the Illinois class action stating its opinion that the settlement demand was unreasonable in light of the pending summary judgment motion, the related litigation pending before the Supreme Court, and the unresolved issue of whether coverage was owed to CMA on this claim.  The letter informed CMA that American Family  would regard any settlement by CMA of the class action litigation along the lines proposed by Wanek to be a violation of CMA's obligations under its two insurance policies with American Family, in particular, those provisions which provide that no insured shall make a voluntary payment, assume any obligation or incur any costs without the insurer's consent.

The following day, on March 22, 2007, counsel for Wanek wrote to counsel for CMA with a reduced demand of $2.99 million plus costs of notice and administration to settle the Illinois class action as well as a pending Wisconsin class action.  Counsel for CMA responded to Wanek's settlement proposal on April 5, 2007, without having

obtained the consent of American Family.  CMA agreed to allow a stipulated judgment to be entered against it in the amount of $2.99 million, with the express proviso that the judgment could only be satisfied by its insurance proceeds under the policies with American Family.  CMA also agreed to assign its rights under those American Family insurance policies to Plaintiffs and pay an amount not to exceed $200,000 to offset the costs of notice to the class and the administration of the settlement.  In a letter from Plaintiff's counsel dated April 9, 2007, Wanek accepted CMA's offer, with only a few, very minor and insubstantial modifications.

In the meantime, on March 30, 2007, in the declaratory judgment action pending in this court, American Family's motion for summary judgment was filed; the summary judgment motion in the Illinois litigation also remained pending.  On April 16, 2007, Wanek filed an agreed motion to stay further briefing on the summary judgment motions in the Illinois class action, informing that court that a settlement of that case had been reached.  While awaiting court approval of the settlement in the class action, Wanek took over the defense of the declaratory judgment action pending in our court by filing a crossmotion for summary judgment on April 27, 2007, the day after American Family moved to amend its complaint to include a claim based on the unauthorized settlement reached between Wanek and CMA, which American Family contends supplied an additional ground for its denial of coverage to CMA.

In October 2007, a hearing was held in the Illinois-based class action litigation on

Wanek's motion for preliminary approval of the class action settlement and notice to the

class.  Judge Nan R. Nolan's minute entry following that hearing noted the pendency of

the lawsuit in our district and the crossmotions for summary judgment which remained

undecided.  Judge Nolan denied approval of the settlement and notice on the basis of the

potential waste of time and money that would be expended on a notice to a class who

might be unable to collect any settlement if no coverage was determined to be available

under the insurance policies.[1]

Subsequently, in March 2008, we issued our ruling declaring that a defense was

owed to CMA by American Family, while reserving a decision on the indemnity issue

raised in the crossmotions for summary judgment until the issues arising from the fact of

settlement could be fully briefed and resolved.  Unfortunately (as described in detail in

our entry of October 21, 2008), though the relief we granted was limited to the single

issue of  American Family's  obligation to defend, a "Final Judgment" was erroneously

docketed and entered of record, which error spawned a premature appeal by American

---

[1]During the pendency of our review of the initial crossmotions for  summary judgment,
the Court was aware only that a settlement had been reached in the class action litigation.  The
parties did not update us on the status of any efforts to obtain approval of the settlement and we
did not independently access and review the electronic docket sheets of related litigation.  In
addition, American Family did not attempt to amend its summary judgment motion (filed prior to
its amended complaint) or seek additional briefing, which would have clarified matters by
placing the issue of the unauthorized settlement squarely before this court for a resolution.
Consequently, our March 31, 2008, ruling on the cross motions for summary judgment was
limited to a decision that a defense was owed CMA and did not address whether the
unauthorized settlement might scuttle any obligation on the part of the insurer to indemnify the
insured.

Family on the issue of coverage.  The effect of our error was compounded by the April

16, 2008, decision of  the Seventh Circuit in *Murray v. New Cingular Wireless Services,*

*Inc.*, 523 F.3d 719 (7th Cir. 2008), which apparently prompted Wanek to accelerate his

request for approval of the class action settlement.  As we have previously noted, *Murray*

significantly narrowed the types of claims that could successfully be brought under FCRA

and foreclosed claims that a credit solicitation violated FCRA when it simply omitted all

the material terms or was of insufficient value.  *Id*. at 722-24.

   With our erroneously entered "final judgment" in hand, Wanek succeeded in

obtaining approval of the class settlement by the Illinois-based federal court.  By the time

the final settlement was signed and approved and judgment entered in the Northern

District of Illinois, CMA's agreement to pay $200,000 toward the costs of class notice

and claim administration had been withdrawn and replaced by an agreement between

CMA and Wanek that the $200,000 payment be covered by a separate consent judgment

for "Notice Payment," which also could be executed on only against the insurance

policies issued by American Family.  Eventually, our court succeeded in correcting the

record by withdrawing the mistaken "final judgment" and  securing a remand of the

appeal of this matter from the Seventh Circuit.  This set the stage for a proper

determination by this court of the remaining issues regarding the effect of the

unconsented to settlement on American Family's obligation to indemnify CMA.

## The Renewed Motions for Summary Judgment as to Indemnification

American Family's "Renewed And Second Motion For Summary Judgment As To Indemnification" (Doc. #147) and Wanek's "Crossmotion for Summary Judgment As To Indemnification" both contain rehashes of the same issues which we addressed in our entry of March 31, 2008. As previously explained, due to the post-motion amendment to the complaint, we stopped short of entering full summary judgment in favor of CMA and Wanek which would have included a ruling on the indemnity issue. American Family insists that we misinterpreted Indiana law in our prior discussion of the coverage issues in light of the "advertising injury" provision of its commercial liability insurance policies,[2] relying on an Indiana Supreme Court case, *Doe v. Methodist Hospital*, 690 N.E.2d 681 (Ind. 1997), and several federal court cases applying Indiana law which held that coverage did not exist under the advertising injury provisions of insurance policies for claims made against an insured under the Telephone Consumer Protection Act (TCPA);

---

[2]The Business Owners Policy issued by American Family provides in relevant part: "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupation of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".
The definition set forth in American Family's Umbrella Policy is identical to this provision, with the exception of an insignificant word difference.

these were so-called "fax-blast" cases, involving the receipt of unsolicited advertisements via telefax.

In *Doe*, Indiana Chief Justice Randall Shepard traced in helpful detail the development and history of the tort of invasion of privacy, concluding for the Court that Indiana law does not recognize a separate tort for disclosure of private information. *Id*. at 693. Invoking this holding and dicta contained therein discussing what constitutes "actionable publication,"American Family argues here that no publication that was violative of the right to privacy occurred in our case. We regard that assertion as beside the point because, after reviewing relevant case law from various jurisdictions dealing with similar coverage issues for FCRA violations in our March 2008 order, we stated as follows: "We share the view ... that the common law principles covering the tort of invasion of privacy have no relevance to insurance contract interpretations." The relevant question is not whether a tort has occurred; rather, the controlling issue is whether an insured would reasonably understand the policy language at issue to provide coverage for liability resulting from the insured's mailing of an advertisement to a claimant based on information it obtained in violation of the claimant's privacy rights as provided under FCRA.

For similar reasons, we do not deem it necessary or appropriate to alter our analysis of the distinctions between a claim for liability coverage for TCPA violations compared to a claim based on a FCRA violation. The Illinois Supreme Court has

interpreted "advertising injury" clauses to provide coverage for TCPA liability, *see Valley Forge Ins. Co. v. Swiderski Electronics, Inc.,* 860 N.E.2d 307*,* and the Seventh Circuit has held generally that there are no differences between the approaches taken by Illinois and Indiana courts in interpreting insurance contracts.  *I/N Kote v. Hartford Steam Boiler Inspection and Ins. Co.,* 115 F.3d 1312, 1316 (7th Cir. 1997).  Even if we were to ignore the Illinois Supreme Court's opinion in *Valley Forge* and side with those jurisdictions which have found that there is no insurance coverage for TCPA violations, *e.g., Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543 (7th Cir. 2009)(Seventh Circuit opining that Iowa courts would not find coverage for a TCPA violation), it is clear that privacy rights relating to seclusion as opposed to privacy rights relating to secrecy or confidentiality pose a valid distinction, one that has been recognized by the Seventh Circuit, *see American States Ins. Co. v. Capital Associates of Jackson County, Inc*., 392 F.3d 939, 942-43 (7th Cir. 2004), and underlay Chief Justice Shepard's explication of Indiana law relating to personal privacy as well.  *Doe*, 690 N.E.2d at 684-86.  Thus, we shall follow Judge Easterbrook's opinion, even though it appears only as dicta in the *American States* decision, to wit, "The structure of the policy strongly implies that coverage is limited to secrecy interests."

Having found no new basis on which to revise our analysis as outlined previously, we deny American Family's Renewed And Second Motion For Summary Judgment As To Indemnification.  This ruling, however, does not obviate American Family's grounds

for challenging its obligation to pay the consent judgment voluntarily entered into by CMA, as is clear from the ensuing discussion.

**The Crossmotions For Summary Judgment As To Settlement**

Whether the settlement entered into between CMA and Wanek is enforceable against American Family depends on whether the holding in *Cincinnati Ins. Co. v. Young*, 852 N.E. 2d 8 (Ind. App. 2006) applies to the case at bar.  Not surprisingly, the parties proffer differing answers to this issue.  Wanek argues that the decision in *Cincinnati Ins.* allows an insured to take advantage of any reasonable settlement demand, including the right to enter into a consent judgment without acquiring the prior approval of the insurer, irrespective of whether the insurer is providing the insured with a defense under a reservation of rights while it seeks a declaratory judgment relating to its coverage obligations.  American Family, on the other hand, contends that the interpretation of the *Cincinnati Ins.* decision advanced by Wanek is inconsistent with prior and subsequent Indiana case law addressing an insurer's obligations when faced with questionable coverage situations.  American Family contends that its decision to pay for CMA's defense of the underlying claim during the time it sought a  declaratory judgment on coverage comports with the requirements of Indiana insurance law and that CMA's entry into a consent judgment providing for an assignment of its rights under the insurance policies to the class violates CMA's obligations under the insurance policy.

Faced with these conflicting interpretations of Indiana case law, we shall proceed to attempt to determine how the highest court in Indiana would resolve the issues presented here. *Lewis v. Methodist Hospital, Inc.*, 326 F.3d 851, 856 (7th Cir. 2003). Ultimately, we are persuaded by the arguments and analysis advanced by American Family. Based on Indiana court decisions, with special reliance on those handed down by the Indiana Supreme Court, we conclude that, under the circumstances presented here, Indiana's highest court would not permit an insured unfettered discretion to enter into a settlement that would bind the insurer without securing the prior consent of the insurer.

Three Indiana decisions issued prior to the *Cincinnati Ins.* case inform our conclusion here. Each of these three cases explores or otherwise discusses an insurer's options when faced with an uncertain obligation to indemnify and a potential conflict of interest with its insured. We begin with a review of the holding in *State Farm Mutual Automobile Ins. Co. v. Glasgow*, 478 N.E.2d 918 (Ind. App. 1985), which addressed the issue of whether an insurer was collaterally estopped from litigating the underlying determination of liability against its insured, when it had refused to defend the insured under an auto policy based on the insurer's preliminary determination that the insured had purposefully driven into the injured third party's car. *Id.* at 920. Claiming that a conflict of interest prevented it from affording a defense to its insured, State Farm unsuccessfully sought to avoid collateral estoppel on that basis. *Id.* at 923. The court rejected State Farm's conflict of interest argument, stating:

-14-

It appears, however, that a conflict of interest such as to preclude the application of collateral estoppel arises only where: (1) the insurance company actually participates in some part of the insured's defense in the underlying tort action, either directly or by reimbursing the insured's personal attorney, and (2) the insurance company gives its insured clear and prompt notice of the existence and nature of the conflict of interest, and its implications for the insured. Both of the above requirements may be met where the insurance company defends its insured under a reservation of rights in the underlying tort action. The insurance company may also protect itself from the conflict of interest by filing a declaratory judgment action, prior to the entry of judgment in the underlying tort action, seeking a declaration of its rights and duties under the policy of insurance relative to the claim against its insured. In the present case, however, State Farm refused to defend Weist from the moment it had notice of Glasgow's action against him, did not seek a declaratory judgment, and did not raise the issue of a conflict of interest until after the final hearing on the proceedings supplemental, too late to constitute clear and prompt notice of the conflict to its insured.

*Id*. (citations within omitted).

Seven years thereafter, in 1992, the Indiana Court of Appeals returned to the issue of collateral estoppel when an insurer's investigation indicates that it has a conflict of interest with its insured. In *Liberty Mutual Ins. Co. v. Metzler,* 586 N.E.2d 897 (Ind. App. 1992), Kenneth Metzler, a truck driver and the putative insured, was found to have acted intentionally when, after being ejected from a bar, he drove his employer's semi-tractor into the middle of the bar killing one person and injuring eighteen others. Following Metzler's criminal conviction, the injured parties filed a civil complaint against Metzler alleging negligence. *Id*. at 899. Metzler never responded to the lawsuit and a default was entered against him. *Id*. Though it was aware of the civil suit filed against Metzler, the employer's insurer, Liberty Mutual, had made no effort to intervene or take action in

-15-

Metzler's defense.  *Id.* at 900.  When recourse was sought against Liberty Mutual in an

effort to compel payment of the default judgment against Metzler from the employer's

insurance proceeds, Liberty Mutual argued that its policy did not cover intentional acts

and further that its conflict of interest with the insured prevented it from taking any action

on Metzler's behalf with regard to the civil lawsuit. *Id.* at 901.  Liberty Mutual lost in the

trial court, which prompted an appeal to the Indiana Court of Appeals.

Citing the above quoted excerpt from the *Glascow* decision, the Indiana appellate

court ruled that Liberty Mutual had neither defended its insureds nor sought a declaratory

judgment regarding its coverage obligation.  *Id.*  Instead, Liberty Mutual relied on

Metzler's criminal conviction to conclusively establish that Metzler had acted

intentionally.  *Id.* at 902.  Accordingly, the Court found that, assuming Metzler qualified

as an insured, Liberty Mutual was collaterally estoppel from challenging the judgment

against him.  *Id.*

> Liberty Mutual overstates its case.  An insurer, after making an independent
> determination that it has no duty to defend, must protect its interest by
> either filing a declaratory judgment action for a judicial determination of its
> obligations under the policy or hire independent counsel and defend its
> insured under a reservation of rights.  *See Glasgow, supra*; *Snodgrass,
> supra*.  As we have indicated, "[An insurer] can refuse to defend or clarify
> its obligation by means of a declaratory judgment action. If it refuses to
> defend it does so at its peril...."  *Mallon*, 409 N.E.2d at 1105, citing 7C
> Appleman, *Insurance Law & Practice*, § 4683 at 53.  Both controlling
> precedent and sound policy dictate that we reject the perspective advanced
> by Liberty Mutual.  An insurer, having knowledge its insured has been
> sued, may not close its eyes to the underlying litigation, force the insured to
> face the risk of that litigation without the benefit of knowing whether the
> insurer intends to defend or to deny coverage, and then raise policy

defenses for the first time after judgment has been entered against the
insured.

*Id.*  Having ruled in favor of the insured, the Court of Appeals remanded the case to the

trial court for a determination of whether, in fact, Metzler was an insured under the terms

of the policy.

Five years later, the Indiana Supreme Court again took up the collateral estoppel

issue in *Frankenmuth Mutual Ins. v. Williams*, 690 N.E.2d 675 (Ind. 1997), which case

involved a babysitter's husband who molested a child who had been placed in the

babysitter's charge, prompting the victim and her mother to pursue a civil battery claim

against the molester.  *Id*. at 676.  Frankenmuth Mutual had issued a homeowner's policy

to the babysitter and her husband.  *Id*.  Although the alleged molester did not notify his

insurer or make a claim against the Frankenmuth policy with regard to the lawsuit filed

against him, the insurer issued a reservation of rights letter to its insured indicating that it

did not believe there was coverage for molestation damages.  *Id*. at 677.  Plaintiffs then

added a second count to their complaint, asserting negligence against the babysitter.  *Id*.

Again, Frankenmuth was not alerted by its insureds to the filing of the amended

complaint but nonetheless had obtained knowledge of the added claim and received a

subpoena as well, as a non-party request for production.  *Id.*

Thereafter, Frankenmuth sent a letter to the attorney who represented the

babysitter and her husband, indicating  that there was no coverage afforded for damages

resulting from the molestation of a child and requesting copies of the lawsuit filings so that it could determine if it had a duty to defend.  *Id*.  The babysitter eventually divorced her husband and entered into a consent judgment on the negligence claim brought against her in the amount of $75,000, which judgment could be executed only against the insurance proceeds.  *Id*.  In connection with proceedings supplemental in which the victim and her mother sought to collect the insurance proceeds in payment of the consent judgment, the trial court ruled in their favor on crossmotions for summary judgment, citing the *Metzler* decision, given that Frankenmuth had not proffered a defense of the babysitter.  *I*d.  The Indiana Court of Appeals reversed, holding that Frankenmuth had received insufficient notice.  The  Supreme Court granted transfer, eventually ruling that the subpoena issued to Frankenmuth provided sufficient notice and, because no intentional act was ever alleged in the negligence Complaint against the babysitter, no conflict arose which would have prevented Frankenmuth from defending the babysitter. *Id*. at 677-79.  In reaching its conclusion,  the Supreme Court distinguished the cases relied upon by Frankenmuth in which no obligation to defend or indemnify on the part of the insurer had been found, noting that each of the cited cases involved an insurer who had pursued a declaratory judgment action to determine the nature and extent of its obligations.  *Id*. at 679.

Each of these cases was also discussed in the decision handed down in our court in *Midwestern Indemnity Co. v. Laikin*, 119 F.Supp.2d 831 (S.D. Ind. 2000), a protracted

insurance coverage case before Judge David F. Hamilton.  In his detailed opinion in *Laikin*, Judge Hamilton reviewed the manner in which the issue of collateral estoppel or issue preclusion has been addressed, where an insurer challenges the availability of coverage under a policy and the insured enters into a settlement of the underlying case based on an assignment of the insured's rights under the policy.  *Id*. at 835-42.  Judge Hamilton fully and clearly illuminated the quandary facing both the insured and the insurer, when a defense is provided under a reservation of rights and the potential third-party recovery is significant.[3]  *Id.*

In *Laikin,* Judge Hamilton sided with the highest courts of Arizona and Minnesota, which, when a consent judgment and assignment of the insured's rights under the policy has been entered into by the insured, foreclose from challenge by the insurer both the liability and the amount of damages due a third-party.  *See United Services Automobile Association v. Morris*, 741 P.2d 246 (Ariz. 1987); *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982).  The Courts of those two states held, however, that, when the insurer is pursued for collection on the consent judgment, the burden of establishing that the underlying settlement is reasonable rests squarely on the third-party.  *Morris*, 741 P.2d at 254; *Miller,* 316 N.W.2d at 735.

In noting that the Texas Supreme Court reached a different conclusion in *State*

---

[3]The undersigned judge commends this discussion to the attention of the parties here, finding, despite its elegance, no need to repeat it as part of this ruling.

*Farm Fire and Casualty Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996), involving an

insured's assignment of claims during the course of a declaratory judgment action and

under a reservation of rights which was determined to be invalid as a matter of public

policy, Judge Hamilton held that in his considered judgment Indiana's highest court

would not likely embrace a position the effect of which would thwart an insured's ability

to reach an early settlement.  Judge Hamilton wrote as follows:

> The Indiana decisions in *Frankenmuth*, *Metzler*, and *Glasgow*, discussed
> above, all recognized that consent judgments with covenants not to execute
> could be imposed on an insurer even where there had been no trial on the
> underlying claim. All three cases involved insurers who had neither
> defended under a reservation of rights nor sought a declaratory judgment, as
> Midwestern did here. Nevertheless, nothing in those Indiana opinions
> suggests that merely filing a declaratory judgment action lets an insurer
> who has breached its contract retain the right to relitigate all issues of
> liability and damages. ...
>
> Thus, this court believes the Indiana courts would adopt an approach to this
> case in which the consent judgment with a covenant not to execute would
> bind the insurer on issues of its insured's liability and the extent of the
> injured parties' damages, so long as (1) the coverage is eventually shown,
> and so long as the consent judgment (2) is not the product of bad faith or
> collusion and (3) falls somewhere within a broad range of reasonable
> resolutions of the underlying dispute.

*Midwestern,* 119 F.Supp.2d at 842.

Following the decision in *Laikin*, the Indiana Court of Appeals favorably sided

with Judge Hamilton's view in denying an insurer the opportunity to intervene in its own

name after a settlement had been reached in a state court action between its insured and a

third-party claimant.  The settlement had been negotiated and reached while the insurer

was pursuing a declaratory judgment action regarding coverage in federal court.

*Cincinnati Ins. Co. v. Young*, 852 N.E.2d 8 (Ind. App. 2006). In that case, Cincinnati

Insurance Company was one of two insurance companies to issue  a CGL policy to Tri-

Tech, a company being sued for negligence in connection with its having provided store

alarm services. *Id*. at 9-10. Cincinnati Insurance denied Tri-Tech's request for a defense

in the underlying case, electing instead to pursue a declaratory judgment action. *Id*. at 10.

Following a trial in which Tri-Tech was provided a defense by the other liability insurer

and found to be 40 percent at fault, a settlement was reached between the claimant, Tri-

Tech and the other insurer. *Id*.  at 11. The settlement required  the other insurer to

contribute its policy limits and Tri-Tech to assign its rights under the Cincinnati Insurance

policy to the claimant. *Id.*  However, the settlement also specifically provided Cincinnati

Insurance with an alternative, namely, the opportunity to reconsider its denial of a defense

and assume control of any further defense and/or appeal. *Id*. Cincinnati Insurance

rejected this second option, choosing instead to seek to intervene in the case in its own

name. *Id.* On appeal, Cincinnati Insurances's intervention was ruled inappropriate

because its interest was held to be contingent, rather than direct, given that it had never

accepted any coverage obligation. *Id*. at 15.

In the case before us, Wanek invokes this *Cincinnati Insurance* decision, arguing

that the consent judgment it entered into in the Illinois litigation provides  collateral

estoppel effect as to liability and damages, and obligates American Family to pay the

judgment entered against CMA, so long as policy coverage exists and the settlement was not wholly without reason.  American Family rejoins  that its agreement to provide a defense for CMA, while pursuing a declaratory judgment action, satisfied its contractual obligations.  As a result, CMA must honor its contractual commitment not to enter into any voluntary payment obligations with third parties.  American Family cites the holding in  *Morris v. Economy Fire and Casualty Co.*, 848 N.E.2d 663 (Ind. 2006) as authority for its position that, so long as it complies with its obligations under the policy, it has a right to demand that the insured also comply with all its policy obligations before the insurer can be required to make any indemnity payments.

In 2006 in *Morris v. Economy Fire and Casualty*, the Indiana Supreme Court ruled that an insured can not impose any prerequisite upon an insurer before complying with its duties under the policy.  *Id*. at 666.  In that case, the insurer had demanded that its insured comply with the conditions set forth in the policy requiring him to submit to an examination under oath.  *Id*.  These conditions were spelled out in the policy provision entitled:  "Your Duties After Loss."  *Id*.  The insureds had refused to submit to an examination until they had been provided copies of their previous unsworn statements, but the Supreme Court held that the insureds in so refusing to submit to the required examination had violated the insurance contract as a matter of law.  *Id*. at 666-67.

American Family points out that its policy contains a section  within the policy's Liability Conditions entitled:  "Duties In The Event of Occurrence, Offense, Claim or

-22-

Suit."  As in *Morris,* American Family argues this policy section obligates CMA to refrain from entering  into any agreement to make a payment without the prior consent of American Family.  Thus, according to American Family, when CMA entered into the settlement agreement without American Family's consent, it breached the insurance contract, the effect of which breach negated any obligation American Family might otherwise have had under the contract to indemnify CMA.

Based on the following factors, we thus conclude that American Family is not bound by the settlement agreement and consent decree entered into by CMA and the Plaintiff class, nor is American Family estopped or otherwise precluded from challenging CMA's liability or the amount of any damages payable to Plaintiffs in the underlying FCRA class action.

**<u>Conflict and Control of the Defense</u>**

First, the underlying facts establish that, in response to CMA's tender of defense, American Family wrote to CMA explaining that it was reserving its rights to deny coverage for various reasons, including that it believed an exclusion in its policy applied which excludes coverage for personal and advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another ... ."  This position taken by American Family created an immediate conflict of interest between it and CMA insofar as a finding of intentional conduct would benefit

American Family but not CMA, given that CMA was exposed to additional damages based on Wanek's and the plaintiff class's demand for enhanced damages for a willful violation.[4]  An insurer faced with such a conflict is required to reimburse its insured's independent counsel as part of its duty to defend.  *All-Star Ins. Corp. v. Steel Bar, Inc.,* 324 F.Supp. 160, 165 (N.D.Ind. 1971); *Liberty Mutual Ins. Co. v. Metzler,* 586 N.E.2d 897, 902 (Ind. 1992);  *Snodgrass v. Baize*, 405 N.E.2d 48, 51 (Ind.App. 1980).  American Family's actions fully satisfied this obligation.

## No Breach of Contractual Obligations

Secondly, because American Family had relinquished control of the defense of CMA, it could have chosen to await the outcome of the class action and defend only against an attempt to collect under the policy, asserting the exclusion as well as any other policy-based defense it had reserved by virtue of its letters to CMA.  *Snodgrass,* 405 N.E.2d at 51.  Instead, it could be said that American Family "doubled down" on its obligation to act in good faith by also affirmatively seeking declaratory relief as to its coverage obligations.  This strategy had the effect of protecting American Family against any collateral exposure on the issue of coverage it might otherwise have faced from a judgment in the class action.  *State Farm Fire & Casualty Co. v. T.B.,* 762 N.E.2d 1227,

---

[4]The case of *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279 (Ind. 2006), upon which this court earlier relied in denying the application of the "intentional conduct" exclusion of the American Family policy, was decided after the reservation of rights letters were issued. Accordingly, there is no evidence of bad faith on the part of American Family in asserting the exclusion as a basis for denying coverage.

1231 (Ind. 2002); *Snodgrass,* 405 N.E.2d at 51.  It also effectively preserved the

"insurer's right to later challenge a determination made in the prior action."  *State Farm*

*Fire & Casualty,* 762 N.E.2d at 1231.

The *Cincinnati Insurance* decision rendered by the Indiana Court of Appeals did

not deviate from the principles established by the Indiana Supreme court in *State Farm*

*Fire & Casualty*.   American Family had the right to reserve its defenses to coverage

while providing CMA with a defense and not be found in breach of its contractual

obligations in its policies.  If, as was clear in *State Farm Fire & Casualty,* American

Family acted within its contractual rights in seeking a declaratory judgment regarding

coverage and in providing a defense under a reservation of rights without being bound by

any adverse "determination" resulting from a trial of the class action, then clearly it

would also not be bound by any adverse "determination" resulting from an agreement

voluntarily entered into by CMA.  The policy language unambiguously forecloses CMA's

freedom to enter into such a settlement, and American Family's actions neither breached

the contract or relieved CMA of its own contractual obligations

An oft-cited commentator in analyzing the holding of the Arizona Supreme Court

in *Morris*, captured the relevant issue this way:

> In *United States Auto Assn. v Morris*, the insured settled without the
> insurer's consent, and the insurer sought to deny coverage on the ground
> that the insured had breached the conditions of the policy.  The court held
> (1) that an insured being defended under a reservation of rights has an
> absolute right to enter into a settlement, and (2) that the insurer must pay

the settlement if it was one that a reasonable and prudent person in the insured's position would have settled for. The result reached in *Morris* is correct only if the settlement accepted by the insured is one that the insurer would itself have been obligated to accept pursuant to its duty to settle. If, however, the settlement is not one that the insurer would itself have been obligated to accept, the insured necessarily breached the terms of the policy by entering into an unauthorized settlement. An insured should not be allowed to enter into an unauthorized settlement simply because it is being defended pursuant to a reservation of rights. If it does so, and the settlement is not one that the insurer would have been duty-bound to accept, the insured should not be able to recover anything. ... As long as the insurer complies with its contractual obligations, it should have the benefit of its contract, and should not be subjected to such disputes with its insured.

The courts that have reached the opposite conclusion have done so on the basis that it is "fairer" to the insured if it is allowed to enter into an unauthorized settlement when the insurer might not afford coverage if the case were to go to judgment. That analysis is not justifiable.

Courts are simply not allowed to rewrite insurance contracts in order to make them more favorable to the insured. Insurance contracts unambiguously state that the insurer will not pay a settlement that is entered into without the insurer's authorization. Courts cannot rewrite the contract to reach the opposite conclusion simply because they believe that it would have been "fairer" if the contract had so provided.

Allen D. Windt, 1 *Insurance Claims and Disputes 5th* § 3.9 at 3-56 (citations omitted).

The Supreme Court of Iowa has reached a similar conclusion after

analyzing the *Morris* and *Miller* decisions, and sparked other, similar, rulings by other

courts:

We think the reasoning of these cases is flawed because they permit an insured to breach his duties under the policy without losing coverage, even though there has not been a breach of the contract by the insurance company. Therefore, we decline to follow them.

*Kelley v. Iowa Mutual Ins. Co.,* 620 N.W.2d 637, 642 (Iowa 2000); *accord, Fuller-Austin*

-26-

*Insulation Co. v. Highlands Ins. Co.*, 135 Cal.App.4th 958, 39 Cal.Rptr.3d 716 (2nd Dist. 2006), *cert. denied*, 549 U.S. 946 (2006).

We believe this approach corresponds to the prior decisions handed down by the Indiana Supreme Court and thus we adopt it here.  American Family would not have been obligated to accept Wanek's settlement demand had it been in control of CMA's defense. Under Indiana law, there is an implied duty arising from every insurance policy requiring the insurer to deal in good faith with its insured, including refraining from any unfounded refusal to pay policy proceeds.  *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 (Ind. 1993); *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 733 (Ind. App. 2008).  We conclude that there were ample reasons for American Family to decide not to enter into the proposed settlement in the class action litigation, namely, the then-pending summary judgment motion (citing numerous recent opinions which had narrowed FCRA's effective reach) along with the pendency of appeals before both the United States Supreme Court and the Seventh Circuit which sought more limited interpretations of liability under FCRA.  In short, a refusal to settle in accordance with the terms requested by Wanek and the Plaintiff class did not constitute bad faith on American Family's part; in fact, such a decision would have been and was well within the boundaries of reasonableness.

**Distinguishing *Midwestern Indemnity Co. v. Laikin***

Wanek has relied heavily on the Indiana Court of Appeals decision in *Cincinnati*

*Insurance* and on Judge Hamilton's analysis in *Laikin*.  For that reason, for clarity sake, we shall include an explanation of our conclusion that *Laikin* is distinguishable and not controlling here.

To begin, certain clear factual distinctions exist between *Laikin* and the case at bar. In *Laikin*, the insurer did not assume responsibility for the insured's defense; in addition, no conflict of interest prevented the *Laikin* insurer from controlling the defense. *Midwestern Indemnity Co. v. Laikin,* 119 F.Supp.2d at 834.  In discussing the interplay between a conflict in interest and collateral estoppel,  Judge Hamilton noted  that in the case before him the insurer's defense to coverage was time based, rather than "a case where the injured persons' claims ... could be sustained on different grounds, one of which would be within the scope of coverage and the other would not."  *Id*. at 838.  As previously discussed, American Family's assertion of a defense to coverage put it in direct conflict with CMA, thereby requiring American Family to relinquish control of the defense to its insured.

In *Laikin*, the insured had "skin in the game," having paid $300,000.00 of a $1.6 million consent judgment and having also offered the insurer a chance to reconsider and take control of the litigation before entering into the settlement.  *Id*. at 834.  In contrast, in the case at bar, CMA had simply walked away from the litigation thereby allowing Wanek a clear shot at collecting on the policies without any proof of liability.  Judge Hamilton opined that in his judgment the Supreme Court of Indiana would likely instruct

trial courts to "view the judgment from the standpoint of the insured at the time of the agreement, keeping in sharp focus the premise that the insurer breached its contract and left the insured hanging."  *Id.* at 844.  To the extent that Judge Hamilton's conclusion reflects the fact that the insurer did not cover the costs of the underlying defense, we have no quarrel; but if his conclusion is based on the assumption that the insurer's providing a defense while also seeking a declaratory judgment would be a breach of contract, we respectfully disagree, as does the Supreme Court, as we understand its rulings.

The third distinction worth noting between the *Laikin* case and the case at bar is the fact that, at the time of Judge Hamilton's decision, the Supreme Court's decisions in *State Farm Fire & Casualty v. T.B*, 762 N.E.2d 1227 (Ind. 2002) and *Morris v. Economy Fire and Casualty Co.*, 848 N.E.2d 663 (Ind. 2006) had not been reached.  Nor, it should be noted, did Judge Hamilton have the benefit of the decision in *Dreaded, Inc. v. St. Paul Guardian Ins.,* 904 N.E.2d 1267 (Ind. 2009), in which case the Supreme Court reiterated its view first explicated in *Morris*, that prejudice need not be shown when an insurer seeks to enforce policy provisions that are threshold requirements,  such as the obligation to give notice, supply records and documentation and submit to an examination under oath.  *Id*. at 1271-72.  We view the requirement that an insured not unilaterally accept an obligation of payment of policy proceeds to be such a threshold requirement as well.

Had Judge Hamilton had the benefit of these additional rulings by the Indiana Supreme Court when reaching his conclusions in *Laikin,* we think he might have

concluded along the lines that we have reached here.  In attempting to divine the way(s) in which  a state's highest court would apply the law in a particular substantive area, federal courts are well advised to review the decisions of that higher court which deal with that area of the law; the decisions of the state's lower courts and of other federal courts are less valuable in conducting the required analysis.  In that regard, we draw significant guidance from a single paragraph from the Indiana Supreme Court decision in *State Farm Fire & Casualty v. T.B.*:

> An insurer may avoid the effects of collateral estoppel by: (1) defending the insured under a reservation of rights in the underlying tort action, or (2) filing a declaratory judgment action for a judicial determination of its obligations under the policy.  *Id. [Liberty Mutual Ins. Co. v. Metzler]*  at 902 (citing *State Farm Mut. Auto. Ins. Co. v. Glasgow*, 478 N.E.2d 918 (Ind.Ct.App.1985)). Either of these actions will preserve an insurer's right to later challenge a determination made in the prior action.

*State Farm Fire & Casualty v. T. B.*, 762 N.E.2d 1227, 1231 (Ind. 2002)(emphasis added).

**Conclusion**

American Family did not breach its contractual obligations under its policies of insurance when it provided CMA a defense to the underlying class action lawsuit under a reservation of rights, while pursuing declaratory relief.  CMA on the other hand did breach its obligation, as set forth in both the business owner's policy and commercial general liability umbrella policy, to wit: "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than

for first aid, without our [American Family's] consent."  Because CMA assumed the obligations set forth in the consent judgment and settlement agreement between it and Wanek in violation of the insurance contract with American Family, American Family is relieved of any obligation to pay or satisfy, in whole or in part, the judgment entered against CMA in the Illinois-based class action or to satisfy any settlement between CMA and Wanek entered into without American Family's consent.

Accordingly, American Family's Second Motion For Summary Judgment As To Indemnification (Doc. # 147) and Wanek's Crossmotion For Summary Judgment As To Settlement (Doc. #153) and Crossmotion For Summary Judgment As To Indemnification (Doc. #151) are DENIED.  American Family's Motion For Summary Judgment As To Settlement (Doc. #140) is GRANTED and a separate final declaratory judgment shall be entered.

**IT IS SO ORDERED.**

Date:  01/12/2010

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

**Copies to:**

-31-

**Daniel A. Edelman**
**EDELMAN COMBS LATTURNER & GOODWIN LLC**
**dedelman@edcombs.com**

**Cassandra P. Miller**
**EDELMAN COMBS LATTURNER GOODWIN**
**cmiller@edcombs.com**

**Robert Scott O'Dell**
**O'DELL & ASSOCIATES PC**
**rodell@odell-lawfirm.com**

**Rhonda Hanna Veen**
**THE WEATHERS LAW OFFICE, P.C.**
**rhonda@sawlaw.net**

**Scott A. Weathers**
**THE WEATHERS LAW OFFICE**
**scott@sawlaw.net**